Good morning, ladies and gentlemen. For family reasons, Judge Grovner is unable to be present in person and is appearing by video. She is on the screen at the podium so lawyers can see her, and we can also see her. So our first case for argument this morning is Assaf v. Trinity Medical Center. Mr. Wood. May it please the Court, Counsel. Good morning. In your decision of August 30, 2012, in reversing the prior ruling of the trial court, this court held that Dr. Assaf was entitled to seek the lost professional fees he incurred as a result of Trinity Medical Center's failure to reemploy him from the date of his termination, which was August 17, 2009, through the end of 2011. In our brief, we went through several issues. This morning I want to focus on primarily three issues, the first being the court's denial of the motion to compel production of neuroscience medical director agreements, the second being the court's ruling as a matter of law that lost professional fees were consequential damages rather than direct damages and, if time allows, Trinity's attack on Dr. Assaf's character. By way of brief background, in 2005, Trinity Medical Center decided to establish an epilepsy clinic, a specialized clinic. In order to do that, they need to have an epilepsy specialist, and they are few and far between, and Trinity Medical Center recruited Dr. Assaf with board-certified fellowship trained in epilepsy. Mr. Woodward, because time is so short, I'd like to get right into a particular issue, if you would, and that is this. You argue that Dr. Assaf is not claiming a decrease in salary, but only a decrease in professional fees. But those fees went to the practice, and Dr. Assaf concedes that he had no ownership interest in the practice. If he had no ownership interest in the practice and his salary was unaffected by the breach, even if the breach caused a decrease in professional fees, what damages, what damages did he suffer as a result? And it's sort of my bottom-line question. Yes, Your Honor. This is a claim for lost professional fees, which are the fees which are generated when the doctor performs services. I don't think it's a question of who the fees particularly go to, but rather how they're generated. In this case, in fact, Dr. Assaf was the practice. I'm afraid I don't understand that. Well, we don't have a claim for lost income. We're not making a claim for lost income. I know. That's the premise of my question. Dr. Assaf's practice was owned by his wife because of Dr. Assaf's immigration status. He was the only physician in that practice. He was the one who made all the decisions. He was the only one practicing medicine in that practice from 2008 on. Dr. Assaf, it would have been nice if Dr. Assaf could have had his own practice, but he simply can't due to the immigration issues. And the lost professional fees would go to the practice generated by Dr. Assaf's providing medical services. Your Honor's question, as I understand it, is about what we have missing litigant. If Dr. Assaf is the only plaintiff and the fees would go to somebody else, doesn't that somebody else have to be a party? I understand the real party and interest question, and I think that in this case when we're dealing with professional fees, I don't think so. I think it's the person who provides the services that is the real party and interest. No, it's the person who is damaged by the loss of the income, and that seems to be a missing litigant. Well, let me ask a separate question. Yes, sir. Which is are you objecting now? Did you object to trial? Are you objecting now to the jury instructions? I did not object to the instructions as they were finally submitted. And I don't understand how there's any dispute before us about whether consequential damages are the correct characterization. I apologize. I did object to the consequential damages instruction. But I can't find any such argument in your brief. Your brief seems to be addressed to the district court's opinion, but unless there's a concrete objection to a jury instruction, I don't see what there is for us to do. In the pretrial rulings of the court … I'm not worried about pretrial rulings. I'm worried about jury instructions. I understand. And I am almost 100 percent positive I did object to … Is there any argument at all in your brief about the jury instructions? I looked, and I'm missing something. Not directly. No, sir. Not a word. No, sir. Let's see. I believe that even though I think the issue is still preserved for the court's consideration through the objection at trial and the discussion in the brief on whether this is a consequential direct damage. And in particular, we believe the court erred as a matter of law as to its ruling that the lost professional fees were consequential damage. To begin with, it ignores the fact that the medical direct agreement required Dr. Sofka to be on active status as a practicing physician with Trinity Medical Center, which required him to provide professional services to the patients of Trinity. Second, we believe that although there's no case directly on point regarding lost professional fees, lost profit cases provide guidance to the court. In particular, we would point to the Illinois Supreme Court case of Midland Hotel Corp. versus R.H. Donnelly Company, a yellow page case, in which Donnelly breached his contract to provide a yellow page ad. I think you're really missing the point of my question. We don't hear appeals to decide abstract legal questions. We decide concrete issues like did the district judge err in instructing the jury, and then is that error consequential or not. In order to decide such a question, we need to know what the instruction was, why it was said to be wrong, how it would have affected the jury, how it could have affected the jury. Your brief has no discussion of any of those matters. So what are we supposed to decide? Well, I believe it's a question of law, whether or not it's consequential or direct. That's just an abstract legal question. If the district judge had said, I believe that this is a banana, you could appeal and say, no, it's not a banana. But unless it affects jury instruction and then the jury in some concrete way, it's irrelevant to the appeal. Yes, sir. Counsel, even if we get past the procedural obstacle, I guess I just have a kind of basic conceptual problem with the case. Dr. Asaf has already been paid the $50,000 that he would have been paid for every year of the relevant contract, right? Yes, sir. For working about a quarter time, 500 hours a year. For doing the administrative functions of the job of medical director. For 500 hours a year, right? Yes, sir. So, I mean, that's the contract. 500 hours a year of services in this particular role in return for $50,000 a year. I don't see how any additional damages could be anything other than consequential. And very sketchy at best. Well, I think, Your Honor, that these damages are similar to the damages from the yellow page. This unit was established to bring in patients, generate fees for Trinity through the technical aspect, renting the beds, room, providing the equipment, and for the doctor who performed the professional services for the people sitting in the bed. And that is the only doctor. Dr. Asaf was not the only doctor providing these services, was he? He was basically the only doctor that did the 24-hour EEG video monitoring, which is all we're asking for in this case. Yeah, that kind of rifle shot is very troubling because you don't want to talk, because you haven't tried to prove, in essence, that he's worse off. You've just tried to show that there's one narrow category of fees that dropped without looking at a larger picture of income. And that is the difficult issue in this case. It is. Okay. Thank you. Thank you, counsel. Mr. Parr. Good morning, Your Honor. I'm here on behalf of the defendant-applicant Trinity Medical Center. We believe that the trial court did not err and that Dr. Asaf is not entitled to a new trial on damages and that the error that the counsel asserts is not correct. With regard to the consequential damages, as the court points out, there was no argument about the jury instructions. But, more importantly, on the conceptual level that counsel argues, in this case, state law applies under Hess v. Bresney and other cases of this court, that since this is a breach of contract case, state law applies. And under state law, we look at direct damages as those flowing directly from the contract. As the court notes, Dr. Asaf has received all of the payments that the contract provided for, the $50,000 a year for 2009, 2010, and 2011, as well as the additional damages of general damages and attorney's fees, which added up to $188,000. He's gotten all that. Was there any offset for mitigation of damages for other work done during those years? No. And, in fact, that was one of the questions that we asked Dr. Asaf's economic expert. Did you take into account the fact that Dr. Asaf had an extra $500, 500 hours per year when he wasn't working for Trinity? In other words, he was paid for 2010 and 2011 for 500 hours of work, but he never did 500 hours of work because they never reemployed him. So he got the salary, but he had an extra 500 hours per year, which he could use to promote his practice. His argument was that as the medical director of epilepsy and EEG, that he went around the community and promoted the Trinity program and that that also promoted his own practice. So we said, well, what about now you've got 500 hours of your own time each year to promote your own practice, and we asked his expert, did you take into account any mitigation that Dr. Asaf had an obligation to try to mitigate his damages by promoting his own practice? And Dr. Newkirk, his expert, said, no, he didn't take that into consideration. And that was one of the points that was raised by our expert, Dr. Sandberg, in criticizing Dr. Newkirk and finding that Dr. Newkirk's analysis was unscientific and that his conclusions were unreliable. So I think it's only natural that the jury didn't accept the point of circumstantial case. It would have been possible for Dr. Asaf to try to bring in direct evidence of doctors who said, well, when Dr. Asaf was medical director, we referred patients to him, but when Trinity didn't re-employ him, then we wouldn't refer people to him anymore. But he never brought in any evidence like that, and he never brought in billing records to show where his patients had come from before he was terminated and after he was terminated. All he did was provide records to his economic expert who came in and testified and was thoroughly impeached on his methodology and his conclusions. Counsel, I'd like to ask you about one incident the plaintiff's counsel mentioned but didn't have much of a chance to talk about, and that was the evidence on, I think it was your cross-examination of Dr. Asaf, about his conflicts with his prior colleagues. I think a lawsuit without mentioning that work. Do you recall what I'm talking about? Yes, yes. And I had understood the district judges in limine order to say that was off limits unless Dr. opened the door somehow on direct. I didn't see that that happened. It looked like the door was opened by you on cross. Well, the doctor said he admitted that all of his patients came to him by referral, and he said that he generally had good relations with other physicians in the community with some exception. Was that on direct or on your cross? On direct. Okay. And then on cross, I started going into that with his complaints about other doctors and about the largest multi-specialty clinic in the area. And, you know, I admit that the court's in limine instruction was perhaps a little different than what actually happened in trial, but I don't see that that creates a reversible error because I don't see that. Well, Mr. Norwood, I also thought about that a bit because I wondered what relevance the evidence regarding his prior litigation had in this case, particularly given that it related to a former employer that predated the relevant time period in this contract case. I thought it was very unfair. Well, Dr. Asaf, in his complaint against the doctors at Medical Arts, also said that they took actions in 2010 and 2011 that harmed his practice, as well as earlier actions that he said harmed his reputation because they charged him with doing an unnecessary workup on a 90-year-old patient and that they interfered with his relations with 3,500 patients of his. And we don't think that these necessarily would be limited to what happened only while he worked for Medical Arts and immediately thereafter. So we felt that that was relevant. And unlike the case where the plaintiff cites where the attempt was made to portray the plaintiff as litigious, we never mentioned the lawsuit, first of all. And secondly, we didn't try to say that he was suing people all over the place or had filed multiple suits. We limited it to specific statements that he had made in his pleadings that he admitted to making. And the reputation of a doctor and the doctor's litigation with other doctors and other practices in the area, in a smaller area like Quad Cities, that does affect the doctor's reputation and it may affect the willingness of other doctors to refer their patients to him. Well, look, the potential for prejudice with such evidence was significant. And all he had done was answer in response to a question that he maintained good relationships with most of the doctors. And then the door just swung wide open. So it's something that I, as I say, is worrisome. Well, I don't think that we really attacked Dr. Vesoff's character. We brought up some specific instances where he did have bad relations with some doctors. I think that is relevant, and I don't believe that it was prejudicial in the scope of the entire trial. The plaintiff's theory of damages, if I understand it correctly, because he lost his administrative role, he also lost certain kinds of fees that would come from treating patients who would be referred to him by others so that his reputation within the medical community and this pattern of referrals would be central to the theory. Is that right? Right. We believe that the plaintiff has not identified any reversible error here, and we ask that the court affirm the judgment of the trial court in all respects. Thank you very much. Thank you very much, counsel. The case is taken under advisement.